FAULKNER, Justice.
This is an appeal from a declaratory judgment holding that a contract entered into between Franklin and Montgomery County for solid waste collection, violated § 22, Constitution, 1901. We reverse and render.
In 1970, the Montgomery County Commission advertised for bids for solid waste collection and disposal. Franklin, bidding for the County at large, was the sole bidder. (After Jones belatedly expressed his desire to bid, he and Franklin entered into an agreement whereby Franklin would employ Jones, and purchase his business.) Following the bid, Franklin and the County signed the solid waste disposal agreement on September 9, effective November 1. Franklin was granted the territory in Montgomery County outside the corporate limits of the City of Montgomery, and it was required to serve every person requesting service in that area. The duration of the agreement was:
“2. The term shall be for a period of five (5) years from and after the date of execution of this instrument, and shall be renegotiated by contractor and representatives of the Board of Revenue and representatives of the County Health Department at the end of said term for an additional five (5) year term, providing the contractor has fulfilled all of his obligations under this contract and has given the county no cause for termination. Said notice of desire to renegotiate this agreement shall be furnished in writing by the contractor at least one hundred twenty (120) days prior to the end of the term of this agreement.”
In 1973 Waste-A-Way was granted a permit by the Health Department to collect solid waste in the City. In violation of this permit, Waste-A-Way expanded into the police jurisdiction. Unable to obtain a permit for the police jurisdiction from either the City or County, in 1974 Waste-A-Way brought suit against Franklin, the County, and the Health Department, attacking the validity of the Franklin agreement and the jurisdiction of the County. The court held the Franklin contract valid and in compliance with all applicable laws. The court further held that the City and County exercise concurrent jurisdiction over the police jurisdiction, with only the County having exercised its jurisdiction; and that under its present permits, Waste-A-Way was authorized to engage in its business only within the corporate limits of the City.
Approximately one month after the ruling, pursuant to a resolution of the Montgomery City Commission, permits for solid waste collection within the police jurisdiction were granted to Waste-A-Way, Jones and Kelley.
Franklin and the County appealed the decree and Waste-A-Way cross-appealed. The litigation was settled, and appeals and cross-appeal dismissed.
During the pendency of the appeal, letter notices of renegotiation of the Franklin contract were mailed to the attorney for Waste-A-Way, Jones and Kelley. At the meeting, Jones and Waste-A-Way expressed interest in bidding on all or part of the county areas. At a later meeting, the County decided to renegotiate the contract with Franklin. No hearings were held on renegotiation of the rates. On August 25, 1975, a second franchise agreement renegotiated pursuant to the original agreement, was entered into with Franklin, with the *6 same maximum rate, for an additional five year period.
In December, the City voted against renewal of the police jurisdiction permits.
Jones, Kelley and Waste-A-Way brought this declaratory judgment action seeking to set aside the 1975 Franklin agreement. Five current or former customers of Waste-A-Way were allowed to intervene as plaintiffs. At an ore tenus hearing, evidence was presented, indicating, inter alia, that Waste-A-Way provides door-to-door residential pick-up service within the police jurisdiction at 50$ (10%) less per month than Franklin’s charges. The court further found that as a result of the competition within the police jurisdiction, “Franklin has substantially reduced his prices for solid waste collection to these [police jurisdiction] establishments.” The court entered its final decree on January 21, 1977, invalidating the 1975 Franklin agreement on the ground, among others, that it violated § 22 of the Alabama Constitution, 1901. The order directed the County to issue permits to the plaintiffs within 30 days and commanded that all Montgomery County outside the corporate limits be open to free competition.
Our opinion will be concerned only with § 22 of the Constitution. Discussion of other issues decided by the trial court is pretermitted.
Section 22 provides that:
“. . . No law . . making any irrevocable or exclusive grants of special privileges or immunities, shall be passed by the legislature; and every grant or franchise, privilege, or immunity shall forever remain subject to revocation, alteration, or amendment.”
The Constitutions of 1819,1861,1865, and 1868 prohibited ex post facto laws, and laws impairing the obligations of contracts. But, when the 1875 Constitution was adopted, § 23 provided:
“That no ex post facto law, or any law impairing the obligation of contracts, or making any irrevocable grants of special privileges or immunities, shall be passed by the general assembly.”
In 1885, this court had before it the question of whether the City of Birmingham could grant the Birmingham Street Railway Company an irrevocable and exclusive privilege to construct and operate a street railway over and through certain streets and avenues of that city. Birmingham & Pratt Mines Street Railway Co. v. Birmingham Street Railway Co., 79 Ala. 465 (1885). There, in an opinion written by Mr. Justice Somerville, this court said that since the State would be prohibited from awarding the exclusive franchise, because of the Constitutional prohibition (§ 23), the City, being an agency of the State, would likewise be prohibited. In other words, the power of the agent cannot exceed that of the principal. This was a monopoly case, and the court explained that in earlier years state governments had granted exclusive and irrevocable franchises to encourage corporate capital investment in critical growth industries. Later, monopolies were viewed as being unfair with free trade, and Constitutional prohibitions found in § 23 were adopted by the states.
This court, in a subsequent case, considered § 23 in the light of public welfare, and upheld a statute exempting railroad employees from work on public roads, on the theory that it was in the public interest for the common carriers to have an adequate work force at all times. Johnson v. State, 88 Ala. 176, 7 So. 253 (1890). Sloss-Sheffieid Steel & Iron Co. v. O’Rear, 200 Ala. 291, 76 So. 57 (1917) was one of the first cases to consider § 22, Constitution, 1901. The court, on the ground of public welfare, upheld a statute giving mining, manufacturing, power, and quarry companies the power of eminent domain. In City of Decatur v. Meadors, 235 Ala. 544, 180 So. 550 (1938), the question presented was whether or not requiring taxicabs to be licensed violated § 22. This court held that no one has the inherent right to operate motor vehicles, as a common carrier, on the city streets; that in its discretion, the city may refuse or it may grant a license for the operation of common carriers. Furthermore, the court said that the limitations *7 embodied in § 22 were for the protection of the city and the general public — not individuals.
In the case before us, the collection of garbage is in the public interest and for the health and general welfare of the public. The contract awarded to Franklin upon the low bid, by the County, is for a definite term — 5 years, extended for an additional 5 years — upon Franklin’s fulfilling his obligation under the terms of the contract. There is no evidence that Franklin has not performed his contractual duties.
The contract is not an exclusive or special privilege banned by the Constitution. This court said in Dickinson v. Cunningham, 140 Ala. 527, 37 So. 345 (1903):
“The monopoly which is obnoxious to the law, or the special exclusive privilege under the ban of the Constitution, is a privilege farmed out to the highest bidder, or conferred because of favoritism to the donee, and not one awarded to the lowest bidder, and for the convenience and benefit of the public. If this doctrine be not correct, then the State can make no contract for supplies for its penitentiary, for its charitable institutions, for its public printing, or any other work of public utility or necessity . . . ”
In our opinion the State of Alabama would not, had it contracted for solid waste disposal, violated § 22. Likewise, the County, an agency of the State, has not violated §22.
The judgment of the trial court is reversed, and the case rendered.
REVERSED AND RENDERED.
BLOODWORTH, MADDOX, ALMON and EMBRY, JJ., concur.